# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **RICK GORHAM,** *et al.*, | * | |
| Plaintiffs | * | |
| v. | * | Case No.: RWT 09cv2472 |
| **INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL-CIO,** | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

The issue before the Court is whether a union breaches its duty of fair representation by requiring nonmembers, who previously articulated a "permanent and continuing" objection to paying for a union's political and other non-representational activities, to renew their objection annually if they wish to continue to be excused from paying such fees.

## BACKGROUND AND PROCEDURAL HISTORY

Defendant International Association of Machinists and Aerospace Workers, AFL-CIO (the "IAM" or the "Union") maintains a nationwide annual renewal policy pursuant to which nonmembers who have previously objected to paying for the IAM's political and other non-representational expenses and subsequently fail to renew their objection during a thirty-day window period are deemed non-objectors and charged full dues. Compl. ¶¶ 9-11, ECF No. 1; *see also* Notice to Employees Subject to Union Security Clauses, ECF No. 10-3.

In July 2008, Plaintiffs Rick Gorham and Robert Negosta allegedly notified the IAM that they objected to paying for such fees and that their objections were "permanent and continuing in nature." Compl. ¶ 19. However, because Plaintiffs did not restate their objection during the

thirty-day window period in November 2008, the IAM demanded in April 2009 that Plaintiffs pay, as a condition of employment, full union dues. *Id.* ¶ 20.

On September 21, 2009, Plaintiffs filed a purported class action complaint challenging the IAM's automatic opt-in procedure. In their complaint, Plaintiffs allege that Defendant has breached its duty of fair representation arising from the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151-169 (West 2010), because (i) the IAM does not have the substantive authority to convert nonmember employees from objectors into non-objectors and (ii) the annual renewal policy is procedurally invalid. Compl. ¶¶ 32-34. Plaintiffs contend that the IAM's policy does not serve a legitimate purpose, *id.* ¶ 13, and is designed to maximize revenues and hinder employee opposition to the Union, *id.* ¶ 12.

Defendant filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted on November 16, 2009, ECF No. 10, and the Court conducted a hearing on the dispositive motion on January 29, 2010, ECF No. 23.

## **STANDARD OF REVIEW**

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

## ANALYSIS

**I.     Duty of Fair Representation and Union Fees**

"[A] union breaches its duty of fair representation if its actions are either arbitrary, discriminatory, or in bad faith . . . ." *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 67 (1991) (quoting *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)) (quotation marks omitted). Each element requires "distinct and separate inquiries." *Jeffreys v. Commc'ns Workers of Am.*, 354 F.3d 270, 274 (4th Cir. 2003). A court must evaluate the objective adequacy of a union's conduct to determine whether it was arbitrary, but also must analyze the subjective intent of union officials to determine whether the action was discriminatory or in bad faith. *See Thompson v. ALCOA*, 276 F.3d 651, 658 (4th Cir. 2002). Courts generally afford considerable deference to unions in determining whether they have breached their duty of fair representation. *See, e.g.*, *Air Line Pilots Ass'n*, 499 U.S. at 78; *Thomson v. Verizon Md., Inc.*, 140 F. Supp. 2d 546, 551 (D. Md. 2001).

Section 8(a)(3) of the NLRA permits employers and unions to enter into agreements ("shop agreements") that require all employees represented by the union to pay dues or fees as a condition of their employment. *See* 29 U.S.C. § 158(a)(3). Pursuant to this provision, unions may charge members and nonmembers fees relating to the union's collective bargaining activities. However, unions cannot charge nonmembers fees unrelated to collective bargaining activities (i.e., fees related to the union's political and other non-representational activities) without their consent. *Commc'ns Workers of Am. v. Beck*, 487 U.S. 735, 762-63 (1988). Nonmembers have the burden of affirmatively making their objection known. *Chi. Teachers Union, Local No. 1 v. Hudson*, 475 U.S. 292, 306 n.16, 307 (1986) (citing *Int'l Ass'n of Machinists v. Street*, 367 U.S. 740, 774 (1961)).

3

Whether a union breaches its duty of fair representation by charging such fees to nonmembers who have previously objected but have subsequently failed to renew their objection has not yet been addressed by the Supreme Court or the Fourth Circuit.

## II. Whether the IAM's Annual Renewal Policy is Arbitrary, Discriminatory, or in Bad Faith

A handful of courts has addressed the validity of various aspects of annual renewal policies, and reached divergent outcomes using different analytical frameworks.[1]

Applying rigorous First Amendment scrutiny rather than the less demanding duty of fair representation standard,[2] the Second Circuit, Fifth Circuit, and Eastern District of Virginia have held that such renewal policies are unconstitutional, while the Sixth Circuit has, without significant analysis, upheld a similar policy. *Compare Seidemann v. Bowen*, 499 F.3d 119, 124-26 (2d Cir. 2007) (holding that procedures for dealing with nonmember objections failed to minimize the risk that their First Amendment rights would be burdened because they were not narrowly drawn), *Shea v. Int'l Ass'n of Machinists & Aerospace Workers*, 154 F.3d 508, 515 (5th Cir. 1998) ("Certainly the procedure that least interferes with an employee's exercise of his First Amendment rights is the procedure by which an employee can object in writing on a continuing basis."),[3] *and Lutz v. Int'l Ass'n of Machinists & Aerospace Workers*, 121 F. Supp. 2d 498,

---

[1] National Labor Relations Board ("NLRB") administrative law judges have issued conflicting decisions on the legality of annual objection requirements, but the full Board has not yet addressed the issue. *See, e.g.*, *United Steel*, No. 25-CB-8891, No. 25-CB-9253, No. 25-CB-9254, 2009 NLRB LEXIS 247, at *75-88 (Aug. 6, 2009) (upholding union's annual renewal policy under the duty of fair representation standard); *Commc'ns Workers of Am.*, No. 8-CB-10487, 2009 NLRB LEXIS 2, at *31-41 (Jan. 9, 2009) (finding that union violated its duty of fair representation by requiring nonmembers to renew their objection yearly).

[2] *See, e.g.*, *Lutz v. Int'l Ass'n of Machinists & Aerospace Workers*, 121 F. Supp. 2d 498, 504-05 (E.D. Va. 2000) (acknowledging that "scrutiny under the First Amendment is significantly more rigorous and less deferential than [duty of fair representation] review").

[3] The *Shea* Court alternatively held that the union breached its duty of fair representation, infusing First Amendment principles into its analysis. *See, e.g.*, 154 F.3d at 517 ("[W]e are called upon to protect the free speech rights of objecting employees from intrusive union procedures."). The alternative holding is merely dictum, particularly in light of the court's comment that "we remain unconvinced that the union's objection procedures should even be

506-07 (E.D. Va. 2000) (faulting the IAM for not offering *any* legitimate reason for the annual objection requirement and comparing it to "a governmental pronouncement that a citizen who fails to cast a ballot on election day will be considered to have voted for a previously designated 'default' candidate"), *with Tierney v. Toledo*, 824 F.2d 1497, 1506 (6th Cir. 1987) ("Since *Hudson* places the burden of objection upon the employees (as contrasted to burden of proof), we do not consider unreasonable the plan's provision that each member be required to object each year so long as the union continues to disclose what it must before objections are required to be made."). The parties in the instant case, however, do not raise any First Amendment concerns.[4]

Far more relevant to this case are two decisions originating from the D.C. Circuit and this Court purporting to analyze annual renewal policies through the lens of the duty of fair representation standard. In *Abrams v. Communications Workers of America*, the D.C. Circuit held, *inter alia*, that a union's renewal policy requiring annual objections within a limited window period was not procedurally unduly burdensome and was "permissible in light of the Supreme Court's instruction that 'dissent is not to be presumed – it must affirmatively be made known to the union by the dissenting employee.'" 59 F.3d 1373, 1381-82 (D.C. Cir. 1995) (quoting *Street*, 367 U.S. at 774). The *Abrams* Court also quoted the Sixth Circuit's decision in *Tierney*, a first amendment case, and then United States District Court Judge[5] Paul V. Niemeyer's memorandum opinion in *Kidwell v. Transportation Communications International*

---

reviewed under the [duty of fair representation] standard. . . [and] we will not apply the . . . standard in this case." *Id.*

[4] Although the Supreme Court has reserved the issue of whether actions taken by a union pursuant to § 8(a)(3) of the NLRA constitute state action thereby implicating constitutional rights, *Beck*, 487 U.S. at 761, recent courts of appeals decisions suggest they do not, *see, e.g.*, *White v. Commc'ns Workers of Am.*, 370 F.3d 346, 349-54 (3d Cir. 2004) (collecting cases); *cf. Kidwell v. Transp. Commc'ns Int'l Union*, 946 F.2d 283, 298 (4th Cir. 1991) (observing that the trend "has been to find no state action").

[5] Judge Niemeyer is now a Judge of the Court of Appeals for the Fourth Circuit.

5

*Union*, 731 F. Supp. 192, 206-07 (D. Md. 1990), *aff'd in part and rev'd in part on other grounds*, 946 F.2d 283 (4th Cir. 1991). 59 F.3d at 1381-82.

In *Kidwell*, Judge Niemeyer addressed a variety of issues including whether a union's thirty-day objection window was too narrow and whether its annual renewal policy was overly burdensome on objectors' rights. 731 F. Supp. at 205. He concluded that the policy was not unreasonable or unduly restrictive, stating that "objections are not to be presumed on an on-going basis" and noting that "an employee who previously objected may have a change of heart and choose not to exercise his or her right to object in future years." *Id.* Although *Kidwell* has been recognized as having been decided under the rubric of a union's duty of fair representation, *see Lutz*, 121 F. Supp. 2d at 502 n.13,[6] Judge Niemeyer only briefly discussed the standard, 731 F. Supp. at 206 (observing that the parties "have given this issue only cursory treatment in their papers and at oral argument"), focusing instead on plaintiffs' constitutional and statutory challenges, *id.* at 205-06 (citing cases analyzing the constitutionality of union procedures).

Accordingly, the Court will independently analyze whether the IAM's annual renewal policy – which transforms nonmembers who previously unequivocally stated that they would never, under any circumstances, pay for political and other non-representational expenses, into non-objectors when they fail to renew their objection during the annual thirty-day window period – is arbitrary, discriminatory, or in bad faith, in violation of the Union's duty of fair representation.

### A. Whether the Policy is Arbitrary

Union actions are deemed arbitrary if, "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness,

---

[6] *Lutz* also incorrectly stated that *Tierney* was decided under the duty of fair representation standard. 121 F. Supp. 2d at 502 n.13.

as to be irrational." *Air Line Pilots Ass'n*, 499 U.S. at 67 (citation and quotation marks omitted). An arbitrary action therefore is without any "rational basis or explanation." *Marquez v. Screen Actors Guild*, 525 U.S. 33, 46 (1998).

Defendant argues that its annual renewal policy is not arbitrary because it "achieves the legitimate purpose of ensuring that stale objections will not be treated as if they were current objections, and thereby results in a more accurate reflection of employees' present intentions with regard to the payment of a full or reduced fee." Def.'s Mot. Dismiss 11-12. During oral argument, defense counsel argued that objections can become stale when employees change their views or the Union shifts its political activities.

Plaintiffs respond that the annual renewal policy is arbitrary because it would be less burdensome on employees and on the IAM to honor continued objections than to require reaffirmation on an annual basis. Pls.' Opp'n 12, ECF No. 13. Plaintiffs further assert that the Union's self-serving assumption that nonmembers who fail to renew their objection may have changed their minds has no rational basis because it is contrary to nonmembers' prior stated intentions. *Id.* at 18.

As a general matter, it is not unreasonable for Defendant IAM to want to collect as much money as it is lawfully entitled to receive. Money enables employees to organize and bargain with employers on a level footing, ultimately promoting the flow of commerce. *Cf.* 29 U.S.C. § 151 (extolling virtues of freedom of association and self-organization). Moreover, it is not irrational for a union to implement a system which permits employees to voice their objections only once a year, during a thirty-day window period. *See Abrams*, 59 F.3d at 1381-82; *Kidwell*, 731 F. Supp. at 205-07. Like any large organization, a union will operate more efficiently if it is able to secure future funding sources. Predictability benefits not only the union, but also the

members it represents as a whole. So long as the window period is sufficiently long and notice to employees is adequate,[7] such policies will ordinarily be reasonable.

The IAM's practice of disregarding "permanent and continuing" objections may be inconvenient to some and perhaps even offensive to others. Alternative procedures may also be less burdensome on nonmembers. However, these concerns are irrelevant to the instant action; the issue before the Court is whether the annual renewal policy that the IAM has chosen to implement violates its legal duty of fair representation.

Affording considerable deference to the Union, *Air Line Pilots Ass'n*, 499 U.S. at 78, the Court concludes that it is not arbitrary or irrational to require nonmembers, including those who have raised a "permanent and continuing" objection, to renew their objection on an annual basis. It is reasonable, and entirely consistent with common human experience, to believe that both nonmembers and unions may alter their positions over time. As Heraclitus aptly long ago observed, "Nothing endures but change." The Yale Book of Quotations 356 (Fred R. Shapiro ed. 2006).

The IAM's practice of periodically auditing nonmembers' current views helps to minimize stale objections – as well as stale consents. Such a policy is consistent with *Hudson* and *Street* as well as Judge Niemeyer's conclusion in *Kidwell* that "objections are not to be presumed on an on-going basis," 731 F. Supp. at 205.[8] Accordingly, the Court finds that the IAM's annual renewal policy is not arbitrary.

---

[7] Plaintiffs in the instant action have not challenged the IAM's notice procedures.

[8] For this same reason, IAM has the "substantive authority to convert . . . nonmember employees from objectors into non-objectors," Compl. ¶ 33. Because "dissent is not to be presumed," *Street*, 367 U.S. at 774, a union may collect non-chargeable fees if nonmembers fail to meet their burden of voicing a current objection, *Hudson*, 475 U.S. at 306 n.16, 307, when prompted on an annual basis.

B.  **Whether the Policy is Discriminatory**

The duty of fair representation prohibits "invidious" discrimination, based on constitutionally protected categories or arising from animus or prejudice. *Jeffreys*, 354 F.3d at 276; *see also Thompson v. Bhd. of Sleeping Car Porters*, 316 F.2d 191, 199 (4th Cir. 1963) ("A union has no more justification to discriminate injuriously in its representation on the ground of nonmembership, or instability of membership, . . . than it has to discriminate on account of skin pigmentation.").

Plaintiffs argue that the IAM's annual renewal policy is discriminatory because it applies only to nonmembers. Plaintiffs observe that while nonmembers must renew annually their objection to paying for the Union's political and other non-representational activities, members are not required to renew their membership on an annual basis.

However, Plaintiffs have not alleged that the IAM's policy is motivated by animosity or personal hostility towards nonmembers. Nor could they. The IAM assumes that both nonmembers and members wish to pay for the Union's political and other non-representational activities in order to retain members and maintain financial support. *Cf.* Compl. ¶ 12. The annual renewal policy is simply not discriminatory.

C.  **Whether the Policy is in Bad Faith**

In the Fourth Circuit, a union acts in bad faith when it engages in "fraud, or deceitful or dishonest action." [9] *Jeffreys*, 354 F.3d at 276; *see also Thomson* 140 F. Supp. 2d at 551.

The IAM's current annual renewal policy of disregarding permanent and continuing objections is not in bad faith. Plaintiffs do not contend that the Union's notice procedures and

---

[9] Plaintiffs cite a case from the Tenth Circuit suggesting that a union acts in bad faith when it puts the union's interests before those of the employees that it represents. *See* Pls.' Opp'n 20 (citing *Aguinaga v. United Food and Commercial Workers Int'l Union*, 993 F.2d 1463, 1471 (10th Cir. 1993)). No Fourth Circuit case has adopted such an expansive definition of bad faith.

9

disclosures are inadequate; the IAM clearly advises employees that if they fail to object during the annual renewal period, they must pay full dues. *See* Notice to Employees Subject to Union Security Clauses. The IAM's decision to implement a fee system designed to periodically gauge nonmembers' current status and err on the side of collecting full dues when no renewed objection is provided is not fraudulent, deceitful, or dishonest because the Union's policy is transparent and predictable.

## **CONCLUSION**

The Court, by separate Order, will grant Defendant IAM's Motion to Dismiss because its annual renewal policy does not violate the Union's duty of fair representation.


<u>August 20, 2010</u>                   <u>          /s/          </u>
Date                                             Roger W. Titus
                                                         United States District Judge